***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and over the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.
3. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on the date of injury and/or occupational disease.
4. An employment relationship existed between plaintiff and defendant on the date of the injury.
5. Defendant was self-insured.
6. Plaintiff worked for defendant for five and a half years and last worked for defendant on July 16, 2001.
7. Plaintiff alleges that he is entitled to medical benefits, permanent total disability benefits, and temporary total disability benefits from July 17, 2001 until the present.
8. On August 16, 2001, plaintiff applied for Social Security Disability.
9. Plaintiff was found disabled for Social Security Disability purposes beginning on July 11, 2001.
10. Plaintiff became eligible for Medicare two years after being in payment status, which was roughly two years after January 2002, or January 2004.
11. The following items were stipulated into evidence before the Deputy Commissioner:
 a. Stipulated Exhibit No. 1: All Medical Records
 b. Stipulated Exhibit No. 2: Plaintiff's Medical Bills *Page 3 
 c. Stipulated Exhibit No. 3: Plaintiff's Reponses to Defendant's Interrogatories
 d. Stipulated Exhibit No. 4: Plaintiff's Letter of Resignation
 e. Stipulated Exhibit No. 5: City of Rocky Mount Cover Sheet
 f. Stipulated Exhibit No. 6: City of Rocky Mount Supervisor's Accident Investigation Report of July 11, 2000
 g. Stipulated Exhibit No. 7: Industrial Commission Forms 18, 19, 61, 33 and 33R
12. The issues before the Full Commission are whether plaintiff sustained an injury by accident and/or occupational disease arising out of an in the course of his employment with defendant, and, if so, what benefits he is entitled to receive.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing in this matter, plaintiff was 32-years old. At the time of alleged injury, plaintiff worked as a construction worker for defendant. During his four and a half year employment with defendant, plaintiff wore rubber work boots.
2. Plaintiff was diagnosed with diabetes 10 to 12 years prior to the alleged work injury and treated with Insulin and oral medication. Medical records, however, indicate that plaintiff was not compliant with his treatment.
3. On July 11, 2000, plaintiff complained to defendant that his work boots caused a pressure area on the sole of his left foot, with swelling and soreness. He was referred to Dr. Purvis *Page 4 
by defendant's health services department. Plaintiff was sent home until the next day and advised to soak his foot.
4. Also on July 11, 2000, plaintiff was seen at Nash Health Care Systems Emergency Care Center with complaints of bilateral foot pain. He stated that the was planning to see a foot doctor, but was having so much pain that he wanted to be evaluated. Plaintiff denied any trauma to his foot. Plaintiff's examination by Douglas J. Haney, P.A.-C revealed tenderness on the arch of both feet. He had full range of motion and his neurovascular system was intact. It was further noted that there were no ulcers or sores on the soles of the feet or between the toes. Following the evaluation, plaintiff was advised to keep his appointment with his foot doctor and take Anaprox for his pain.
5. Plaintiff filed a Form 18 in May 2002 claiming that on July 11, 2000 he suffered a pressure point on the sole of his left foot, along with swelling and soreness, which was caused by his work boots.
6. Plaintiff's claim was denied via Form 61 on August 3, 2000, on the grounds that the soreness to plaintiff's foot was not caused by accident or occupational disease.
7. At the Deputy Commissioner's hearing, plaintiff testified that on July 11, 2000, he slipped and fell, aggravating his diabetic neuropathy and correlating symptoms. In his Answers to Pre-hearing Interrogatories, plaintiff gave an account of slipping and falling while using a weed eater on a sloping bank due to improperly fitting work boots, which resulted in diabetic neuropathy.
8. On July 12, 2000, plaintiff returned to defendant's employee health services for follow up. Plaintiff was instructed to remain on light duty until July 16, 2000, as ordered by his doctor, and to stay off his feet as much as possible. It was indicated that plaintiff needed *Page 5 
cushioning for his boots and to take extreme care of his feet, including observation for discoloration and skin breakdown.
9. On July 20, 2000, plaintiff saw John Faulkner, P.A.-C, with the Medical Clinic of Enfield. Plaintiff complained of problems with the bottoms of both of his feet for a month and a half. Plaintiff denied any trauma. Upon examination, Mr. Faulkner did not find any changes in plaintiff's feet associated with diabetes. Plaintiff was advised to see a podiatrist regarding padding in his boots and treatment.
10. In August of 2000, plaintiff transferred to the gas department of defendant. The application for transfer was made prior to the July 11, 2000 incident. In the gas department, plaintiff no longer had to wear work boots.
11. Plaintiff continued working in the gas department until he resigned in July 2001. In his letter of resignation, plaintiff stated that neuropathy, a condition related to his diabetes, was causing him constant pain and preventing him from performing his duties. There is no evidence in the record to indicate that any accommodation was recommended by plaintiff's treating physicians or otherwise requested by plaintiff to allow him to continue working.
12. Dr. Wesonga at Boice-Willis Clinic has treated plaintiff for his diabetes. Plaintiff testified that Dr. Wesonga refused to provide him with a written opinion or support his claim that his work boots were causing him problems, and that Dr. Wesonga related all of his problems to his diabetic neuropathy. Dr. Wesonga's medical records are not part of the evidence of record.
13. Plaintiff returned to Nash Health Care Systems Emergency Care Center on July 16, 2001 with complaints of aching and tingling in both upper and lower extremities "for a while." Plaintiff again denied injury and was advised to minimize his standing and walking until July 23, 2001. *Page 6 
14. On March 17, 2002, plaintiff returned to the Emergency Care Center with complaints of bilateral leg numbness for eight months. The clinical record describes the pain in the left leg as a "burning sensation." Plaintiff was assessed with diabetic neuropathy and given Lortab.
15. Mr. Faulkner is the only medical care provider who testified in this case. Mr. Faulkner testified that plaintiff was diagnosed with diabetes on July 27, 1995 and was treated by another physician's assistant under the supervision of Dr. Wesonga. Beginning in 1996, Mr. Faulkner saw plaintiff every four to six weeks for treatment of his diabetes. By July 1996, with a combination of oral and injected medication, plaintiff's blood sugar was under control. In February 1997, plaintiff returned to Mr. Faulkner to restart his treatment, as his blood sugar levels were elevated. Plaintiff, however, did not keep his appointments and his blood sugar remained elevated. By May 1998, plaintiff's blood sugar levels were back under control. After May 1998, plaintiff did not return to the Medical Clinic of Enfield until July 20, 2000.
16. On July 20, 2000, Mr. Faulkner saw plaintiff only because plaintiff requested a note regarding padding of his shoes. Plaintiff told the nurse that he had been having problems with his feet for a month and a half, but did not say anything about standing in an awkward position on embankments or about a fall at work. At the time of his evaluation, Mr. Faulkner found no symptoms or objective signs of a diabetic neuropathy.
17. Mr. Faulkner testified that, except for a brief time at the beginning of his treatment, plaintiff was non-compliant with his diabetes treatment regimen. Upon review of plaintiff's medical records in 2000, 2001 and 2002, Mr. Faulkner testified that plaintiff's medical care providers did not note any lesions, breaks in the skin, infections or ulcers. Additionally, plaintiff did not report any awkward standing or positioning. Mr. Faulkner explained that the *Page 7 
exact cause of diabetic or peripheral neuropathy is unknown, however, it may be caused by high blood glucose levels in persons whose blood sugar is not controlled.
18. Mr. Faulkner testified that based upon his examination and relationship with plaintiff, the treatment records prior to the July 20, 2000 visit and what was presented to him as the problem on July 20, 2000, he could only assume that plaintiff's foot pain was related to his boots and not to his diabetes or diabetic or peripheral neuropathy. He further testified that any testimony that he gave on causation or disability was purely hypothetical, as he did not treat plaintiff for his diabetes on July 20, 2000 or thereafter. As for the other medical care providers, Mr. Faulkner testified that plaintiff provided the other medical care providers with a diagnosis of peripheral neuropathy and that, according to their medical records, they did not diagnose it themselves. No medical care provider found that plaintiff's job placed him at an increased risk of developing diabetic or peripheral neuropathy.
19. The first reference to numbness or loss of feeling in his toes and feet, which is a major symptom of peripheral neuropathy, was not made by plaintiff until July 16, 2001, more than one year after the alleged work incident.
20. Since his resignation on July 17, 2001, plaintiff has not worked and has not looked for work, despite his belief that he probably could work with restrictions due to his diabetes.
21. The Full Commission places greater weight on the testimony of Mr. Faulkner than plaintiff and finds that plaintiff did not establish that he suffered an injury by accident or occupational disease on July 11, 2000. Plaintiff has further presented no credible or competent evidence to establish that he suffered an exacerbation or aggravation of his pre-existing diabetic condition as a result of his employment as a construction worker with defendant on July 11, 2000, *Page 8 
that he is incapable of earning wages in either the same or any other employment, or that he has otherwise suffered any temporary total or permanent and total disability due to the alleged incident of July 11, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment. Henry v. A.C.Lawrence Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). Plaintiff failed to carry the burden of proving by competent evidence that a causal relationship existed between the work-related accident and the disability for which compensation is sought. Click v. FreightCarriers, 300 N.C. 164, 265 S.E.2d 389 (1980). Thus, plaintiff did not sustain an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant on July 11, 2000. N.C. Gen. Stat. § 97-2(6); Anderson v. Motor Co., 233 N.C. 372,64 S.E.2d 265 (1951).
3. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease under N.C. Gen. Stat. § 97-53(13). This requires the plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of *Page 9 
the employment; and (3) there must be proof of causation. Hansel v.Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101 (1981).
4. In the instant case, plaintiff has failed to establish by the greater weight of the evidence that his condition was characteristic of and peculiar to his employment, that he was at an increased risk of developing the condition due to his work, or that his condition was caused by the work. Hansel v. Sherman Textiles, supra. Thus, plaintiff did not contract a compensable occupational disease arising out of and in the course of his employment with defendant. N.C. Gen. Stat. §97-53(13).
5. Plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2 et seq.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, this claim must be and is HEREBY DENIED.
2. Each side shall pay its own costs.
This 12th day of January, 2007.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 CONCURRING: PGPage 10
 S/___________________ BUCK LATTIMORE CHAIRMAN
 S/____________________ DIANNE C. SELLERS COMMISSIONER *Page 1